ROBERTSON, J.
There can be no doubt that a party may, by accepting a legacy coupled with a condition, bind himself to the performance of the condition, although the burden may exceed the benefit. But it must appear that he elected to accept the legacy and perform the condition, with full knowledge of all the facts and circumstances necessary to enable him to make a judicious choice. To make an election conclusive, the party must be informed as to the relative value of the things he elects between. And where he has made an election without ' sufficient information, or under a mistake, he will be relieved against the consequences upon the terms of restor *847 ing- other persons, whose rights may be affected by his acts, to the same .situation as if those acts had not been performed.
Hill and wife deny that she ever accepted the provisions of the will of her former husband, Pollock; but I do not consider it necessary to enter upon an examination of this question, because even if it be admitted that she did accept them, and that the construction placed upon the will by the Circuit court is correct, it seems to me to be quite clear, on applying the foregoing well 'established principles to the case, that she is not bound by such acceptance, and ought to be relieved from its consequences.
It cannot be xiretended that she made the election with information as to the condition of the estate ; *that she knew it was insolvent, and that she was assuming a charge instead of deriving a benefit by taking under the will.
Nor can it be said that injury has resulted to any one from the course she has pursued. On the contrary, it appears that the property while in her possession and tinder her management, increased in value; and that the fund for the payment of debts was largely augmented. Pollock’s creditors and the estate of his deceased partner have thus been benefited, and of course can have no right to complain that she did not make known at an earlier day her determination not to take under the will. Besides, the delay in bringing matters to a close was in a great degree attributable to the provisions of Huston’s will prohibiting the sale of his interests in the partnership property from being made within five years after his death.
I think, therefore, that supposing Mrs. Hill to have made an election, she should have been permitted by the court to reconsider it, and to relieve herself from liability for the debts of her former husband, by giving up his property to his creditors.
On another ground also it seems to me fhat the decision of the Circuit court is erroneous.
I am of opinion, that upon a proper construction of Pollock’s will, his widow was not required to make an election ; and that her taking under it could not impose upon her any liability, beyond the value of the estate, for his debts.
No case of election, under a will, can ever arise, unless the intention of the testator to require the party to elect is clear and decisive. 1 Jarman on Wills 393; Crump v. Redd’s adm’r, 6 Gratt. 372.
Such intention never exists, unless the testator designs a benefit for some other party, who, as well as the legatee put to the election, is the object of his bounty.
xTn this case, the whole estate was given to the wife, to the exclusion of even the children of the testator. There was no object of his bounty in whose favor he could have designed an election to operate : For it cannot be supposed that he intended to make his creditors objects of his bount5' at the expense of his wife: that, knowing his estate to be insolvent, he devised it to her, with the view of imposing upon her the obligation of paying his debts, however much their amount might exceed its value; and of thus taking from her, and from his and her children, the means of support, which after his death, she might acquire by her own industry. Yet we must believe all this before we can come to the conclusion that he intended to g'ive her his estate only upon the condition that she should become pei-sonaily bound for his debts, whatever their amount might be.
But it may be said that while it is clear he did not design this, such is the effect of his will. That he was himself mistaken as to his pecuniary condition, and did not foresee the consequences of the provision he made; and that the will, being clear and unambiguous in its language, must be carried into effect even although the result may be different from what he anticipated.
There can, I think, be no doubt that he was mistaken as to the situation of his affairs, and supposed there would be something left for his wife after the payment of his debts. This made him perhaps less cautious in his language than he might otherwise have been. If he had doubted the sufficiency of his estate to pay his debts, he would probably have used terms about which no controversy could have arisen.
But the whole question is at least one of intention : for, as has been shown, a legatee can never be required to elect unless the testator intends it: and can the fact that the testator labored under a mistake like this *create an intention for him, which we know never could really have existed for an instant in his mind?
In construing wills, courts are never bound to give a strict and literal interpretation to the words used, and by adhering to 1he letter, defeat the manifest object and design.
When, in this case, we look at the will itself; the relative situation of the parties; the obvious purpose to benefit the wife; the improbabilitjq nay the absurdity of the idea that the testator intended to charge her personally, beyond the value of the estate he gave her, with the payment of his debts; we cannot hesitate in deciding that the will properly construed means no more nor less than that the widow should take the whole estate subject to the payment of the debts of the testator.
But it has been insisted in the argument here, that if Hill and wife are not liable for the payment of Pollock’s debts by reason of her accepting the provisions of his will, they are at least bound to account for the profits made from his estate after his death, and that those profits greatly exceed the rents with which they have been charged.
Numerous cases have been cited to show that a surviving partner carrying on business with the partnership effects, must account for the profits; and that an executor carrying on trade with the assets of his testator, is held accountable for all profits, even though he makes himself personally liable in the business.
*848 These are unquestionably well settled rules of law, but they have no application to this case.
No question arises as to the liability of the surviving partner for profits; for Pollock did not, after the death of Huston, continue the business as surviving partner, but became tenant of the property at a rent agreed upon between him and the executor of Huston: And there is no good ground for insisting that *his executrix made herself liable for profits, either to the firm, or to his estate.
No such liability was suggested in the court below. No account of profits was asked for or ordered; and there is nothing to show that profits were in fact made. But if it be conceded that profits were made, she is not bound to account for them. She subjected the assets tono risk or hazard; and cannot be considered, in the sense of the rule referred to, as having continued them in trade. She is properly to be regarded as a tenant of the property; and least of all, • have the appellees any right now to treat her otherwise.
In the account filed as an exhibit with the bill, she is charged with rent for the whole property, at the same rate which had been agreed upon as to Huston’s moiety, between her husband in his lifetime and Huston’s executor. This account was made out under the supervision and with the aid of Huston’s executor, and of his adult children, and was admitted by them to be correct, as far as the data in the possession of the parties at the time enabled them to state it. The correctness of the charges of rent was not only then acquiesced in by all parties, but in the report of the commissioner, made under the order of court, the same charges were continued without objection from any quarter. This report was confirmed, and the decree now appealed from was entered in favor of the appellees in conformity with it.
Under these circumstances, it cannot be doubted that Mrs. Hill must be considered as having held the property as tenant, at a fair rent, for which she has duly accounted.
The appellants are in no way liable for the debts of the firm of Pollock & Huston, the estate of Huston being alone liable after the social assets shall have been exhausted, inasmuch as the whole of the individual ^assets of Pollock’s estate have been absorbed by his own debts.
To the extent that the appellants have paid debts of the firm out of their own funds, they must, after the exhaustion of the social assets, be reimbursed by the estate of Huston.
I think the decree should be reversed, and one entered in conformity with the foregoing opinion.
ALLEN, P., and MONCURE and LEE, Js., concurred in the opinion of Robertson, J.
DANIEL, J., dissented.
Decree reversed.